Per Curiam.

Counsel are agreed that this matter is before the court de novo for consideration of the evidence and the recommendation of the Board of Commissioners on Grievances and Discipline.
Fortunately many of the controlling facts are not in dispute.
The conclusions of the board read as follows:
“1. Aaron Fleck, Sidney Fleck and Charles Fleck are guilty of misconduct within the meaning of paragraph 5 of amended Rule XXVII of the Supreme Court of Ohio, in the following respects:
“a. In that they, as partners, wilfully entered into a written contract as heretofore set forth with Local 407 of the Teamsters Union, Cleveland, Ohio, on or about November 25th, 1957, which *469 contract constituted an employment by a labor organization under which legal services would be rendered to the members thereof in respect to their individual affairs, and constituted a seeking out of those with claims for personal injuries in order to secure them as clients, contrary to Canons 27, 28, 29 and 35 of- the Canons of Professional Ethics.
“b. In that they, as partners, by entering into said written contract with a labor union wilfully caused a system of referrals to be created in order to carry out the purposes of the contract, whereby said respondents obtained others, to wit: the officers and employees of said union, as touters, to solicit and obtain professional employment for them, by referring union members to said respondents for counsel and assistance in their individual affairs, to wit: personal injury claims under the workmen’s compensation laws, contrary to Canons 27, 28, 29 and 35 of the Canons of Professional Ethics and Bule XXVIII, Section 3, of the Supreme Court of Ohio.
“c. In that they, as partners, by entering into the aforesaid contract with a labor union did breed litigation by seeking out persons having personal injury claims under the workmen’s compensation laws as clients, contrary to Canon 28 of the Canons of Professional Ethics.
‘ ‘ 2. Aaron Fleck is guilty of misconduct within the meaning of paragraph 5 of Bule XXVII of the Supreme Court of Ohio in that he solicited professional employment by personal communications to the members of said union local 407 in meeting assembled for the purpose of securing the execution of said employment contract by the union, whereby he would render the members legal services in their individual affairs, the same not being warranted by his personal relations with said members, contrary to Canon 27 of the Canons of Professional Ethics.
“3. The respondents are not guilty of misconduct relating to the alleged making of fraudulent claims and statements to the Industrial Commission of Ohio.”
As held by this court in the fifth paragraph of the syllabus of In re Disbarment of Lieberman, 163 Ohio St., 35, “the degree of proof required in a disbarment proceeding is a preponderance of the evidence.”
*470 Are the charges against these respondents sustained by a preponderance of the evidence in this record?
Conclusion No. 1 of the board, supra, relating to the purpose of the admitted contract with the union, is based on several findings of fact, five of which read as follows:
“23. The board finds that the respondents, Aaron Fleck, Charles Fleck and Sidney Fleck, at the execution of said contract, anticipated that the availability of their ‘free services’ and preferential rates would be brought to the attention of the members of local 407 by union officers and would result in many such members consulting them and then employing them on a fee basis, the same being their motivation for making said contract.
'“24. Sillins, in preparing the contract, anticipated that there would arise out of the preparation by Fleck and Fleck of the C-l and C-3 forms, many calls for serviées which would require claims for permanent partial disability and permanent total disability. The board finds that the respondents had the same anticipation.
“25. Sillins understood that by said contract local 407 assumed the responsibility of sending over to the Fleck and Fleck office, members requiring service. The board finds that the respondents had the same' understanding.
“26. Sillins understood that the availability of free law service to the union members was to be mentioned to them by a bulletin to be circulated by the union. The board finds that in making the contract, the respondents had the same anticipation.
“27. Sillins understood that calls and inquiries of union members would thereupon be referred to Fleck and Fleck. The board finds that the respondents had the same understanding at the execution of the contract. Such a reference would be necessary to make the service available to the union members and give effect to the contract.”
A study of the evidence in the record clearly sustains the finding and conclusion of the board. The mailing of copies of the contract to the 8,000 union members was done for the unmistakable purpose of soliciting professional employment, and that purpose was accomplished. The board was correct in finding that “all of the respondents, with full knowledge of the *471 contract, received and enjoyed the benefits accruing therefrom to the partnership following its execution and that no partner repudiated the same but by their respective conduct ratified and approved its execution.”
With reference to the further charge of false representations by the respondents before the Industrial Commission of Ohio for the purpose of obtaining advance payment of attorney fees, this court reaches a conclusion different from that of the board.
In its finding No. 10, the board expressed the opinion that the so-called C-32 applications for lump-sum awards probably would have been allowed even if the respondents had disclosed to the Industrial Commission the true nature of the transactions, namely, that the loans had been negotiated for the sole purpose^ of advancing the payment of attorney fees to the respondents. This finding of the board seems to be based on the speculative testimony of one of counsel for the commission who was recalled as a witness by the panel and not by the parties over the objection of the relator and was permitted to so testify although Section 4123.57 (B) (126 Ohio Laws, 1015, 1029) provided that “in the event compensation is commuted for the purpose of paying fees for services rendered in the prosecution of a claim the commission shall, after hearing, fix the amount of such fees.” Furthermore, a former member of the commission testified:
. “Our inquiry determined, Sir, that these fees were not being paid in the best interest of the claimant but through subterfuge being paid to Mr. Fleck and getting around our 4123.57-B. In other words, he was not filing for fees under 5-B, but loan applications as subterfuge to get fees to circumvent a hearing by the commission to determine whether of not a fee or how much of a fee should be paid.”
Patently there was nothing innocent or unintended in the results of the efforts of the three respondent partners. The scheme of having each of their workman’s compensation clients borrow money was a deliberate, simple and effective device enabling them to secretly grasp fees in greater amounts and in less time than provided by law.
The handling of disciplinary matters is an unwelcome and unpleasant task for members of the Bench and Bar, but *472 if any semblance of an ethical profession is to be maintained, the responsibility therefor is clear and inescapable. These three partners “did breed litigation,” and all three “received and enjoyed the benefits accruing * * * to the partnership.” Under these circumstances the members of the court see no other course than to find all three respondent partners guilty as charged and to order them suspended indefinitely.

Respondents ordered suspended forthwith.

Weygandt, C. J., Zimmerman, Taet, Matthias, Bell, Herbert and O’Neill, JJ., concur.